IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

JUL 20 2007

JAMES N. HATTEN Clerk

By. _____ Deputy Clerk

COLUMBUS DRYWALL &
INSULATION, INC., et al.,
individually and on behalf of a
class of similarly situated
persons,

        Plaintiffs,

v.

MASCO CORPORATION, et al,,

        Defendants.

CIVIL ACTION NO.

1:04-CV-3066-JEC

## O R D E R  &  O P I N I O N

This case is presently before the Court on plaintiffs' Motion
for Class Certification [347]; defendants' Motion for Leave to File
a Supplemental Brief in Opposition to Plaintiffs' Motion for Class
Certification [379]; defendants' Motion to File Reply in Support of
Defendants' Supplemental Brief in Opposition to Plaintiffs' Motion
for Class Certification [391]; plaintiffs' Motion for Preliminary
Approval of Settlement with Guardian and Johns Manville [376];
plaintiffs' Motion for Preliminary Approval of Settlements with
Guardian, Johns Manville and Knauf [404]; plaintiffs' Motion for
Preliminary Approval of Settlement with CertainTeed and Supplement to
Plaintiffs' Prior Motion for Preliminary Approval of Settlements with
Guardian, Johns Manville and Knauf [412]; and Masco's Motion to Stay

AO 72A
(Rev.8/82)

plaintiffs' Motion for Preliminary Approval of Settlements with Guardian, Johns Manville and Knauf and plaintiffs' Motion for Preliminary Approval of Settlement with CertainTeed and Supplement to plaintiffs' Motion for Preliminary Approval of Settlements with Guardian, Johns Manville and Knauf [424].

The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that plaintiffs' Motion for Class Certification [347] **should be DENIED without prejudice**; defendants' Motion for Leave to File a Supplemental Brief in Opposition to Plaintiffs' Motion for Class Certification [379] should be **DENIED as moot**; defendants' Motion to File Reply in Support of Defendants' Supplemental Brief in Opposition to Plaintiffs' Motion for Class Certification [391] should be **DENIED as moot**; plaintiffs' Motion for Preliminary Approval of Settlement with Guardian and Johns Manville [376] should be **DENIED as moot**; plaintiffs' Motion for Preliminary Approval of Settlements with Guardian, Johns Manville and Knauf [404] should be **DENIED as moot**; plaintiffs' motion for Preliminary Approval of Settlement with CertainTeed and Supplement to Plaintiffs' Prior Motion for Preliminary Approval of Settlements with Guardian, Johns Manville and Knauf [412] should be **GRANTED**; and Masco's Motion to Stay plaintiffs' Motion for Preliminary Approval of Settlements with Guardian, Johns

2

Manville and Knauf and plaintiffs' Motion for Preliminary Approval of Settlement with CertainTeed and Supplement to plaintiffs' Motion for Preliminary Approval of Settlements with Guardian, Johns Manville and Knauf [424] should be **DENIED**.

## BACKGROUND

### A.   The Litigation Class

On October 19, 2004, plaintiffs filed a putative class action in the United States District Court for the Northern District of Georgia, alleging unreasonable restraint of trade in violation of the Sherman Act, 15 U.S.C. § 1.   ("Compl." [1].)   Discovery was protracted and the discovery process triggered numerous motions.   All discovery disputes were referred to Magistrate Judge C. Christopher Hagy.   Discovery began in 2005 and continued through January, 2007.

On October 17, 2005, plaintiffs amended their complaint to add allegations against Guardian Building Productions Distribution, Inc. ("Am. Compl." [203]).   On January 27, 2006, plaintiffs once again amended their complaint; this time, seeking to refine their class definition and clarify the injuries suffered by the class.   ("Second Am. Compl." [274].)

In their second amended complaint, plaintiffs proposed to represent a class of insulation contractors and distributors who purchased residential fiberglass insulation products from defendants Johns Manville ("Johns Mansville"), CertainTeed Corp.

3

("CertainTeed"), Knauf Insulation GmbH ("Knauf"); Guardian Fiberglass, Inc. (and its distribution company) (collectively "Guardian"), and Owens Corning Corp. ("Owens Corning") (collectively the "Manufacturers"). (Second Am. Compl. at ¶ 1.) According to plaintiffs, the Manufacturers produced almost 100 percent of the fiberglass insulation sold in the United States. ("DelRoccili Decl." attach as Ex. A to "Def. Mem. in Supp. of Mot. To Strike Portions of Mot. for Class Certification" [280] at 11; "Templeton Dep." attach. as Ex. 43 to Mot. for Class Certification at 8.) Except for Owens Corning, which is in bankruptcy, plaintiffs named each of the Manufacturers as defendants (collectively "manufacturer defendants"). In addition to the manufacturer defendants, plaintiffs brought suit against Masco Corporation and certain of its affiliates (collectively, "Masco"). According to plaintiffs, Masco is the largest insulation contractor and distributor in the nation with 250 or more branch locations across the country. (Mot. for Class Certification at 1; *citing* "Templeton Dep." at 15, 103; "DeMarie Dep." attach. as Ex. 17 to Mot. for Class Certification [347] at 13-14.)

In essence, plaintiffs' second amended complaint alleges that Masco orchestrated a conspiracy with the Manufacturers to impose and maintain a price "spread" between the prices that Masco paid for fiberglass insulation and the prices paid by other purchasers,

4

including the class members. (*Id.*) Specifically, plaintiffs state that Masco entered into a series of agreements with the individual manufacturers, in which the individual manufacturers agreed to sell residential fiberglass insulation to independent contractors at prices that were a significant percentage above those offered to Masco. (*Id.*) Plaintiffs further state that these agreements restrained trade, and caused the class members to pay, and continue to pay, super-competitive prices for insulation, which interfered and continue to interfere with, their ability to compete with Masco. (*Id.*)

Plaintiffs presented documentary and testimonial evidence in support of their allegations that Masco entered into a series of agreements with the Manufacturers to maintain a price spread between itself and the other contractors. ("Mem. in Supp. of Class Certification" [347-2] at 2-15.) For instance, plaintiffs point to a 2002 memorandum drafted by Johns Manville stating that "Masco has always tried to negotiate what they call the 'spread' between their price and the independent contractor price level." ("June 26, 2002 Masco Memorandum" attach. as Ex. 11 to Mem. in Supp. of Class Certification)

Based on evidence of this nature, as well as the allegations in plaintiffs' second amended complaint, on May 22, 2006, plaintiffs filed a Motion for Class Certification, seeking to certify a class of

AO 72A
(Rev.8/82)

residential contractors who claim antitrust injury flowing from the alleged conspiracy. (Mot. for Class Certification [347].) In this motion, plaintiffs sought to certify the following class:

> "All residential insulation contractors, excluding the defendants or any of their affiliates, who, during the period from January 1, 2000 through December 31, 2004, purchased fiberglass insulation suitable for residential installation directly from Johns Manville; CertainTeed Corp.; Knauf Insulation GmbH; Guardian Fiberglass Inc.; Guardian Building Products Distribution, Inc.; and/or Owens Corning Corp. ("the Manufacturers"). (Mot. for Class Certification at 1.)

In support of their motion for class certification, plaintiffs submitted the preliminary expert report of Ph.D. economist, Dr. DelRoccili, ("DelRoccili Decl.") In this report, DelRoccili states that he would expect the alleged conspiracy to impact all class members by "artificially raising the starting point for negotiations" and "interfering with the natural competitive forces" that otherwise would have driven prices for fiberglass insulation down. (DelRoccili Decl. at 26.) DelRoccili contends that both through statistical regression analysis and an examination of the structural and competitive characteristics of the fiberglass insulation industry, he could demonstrate class-wide impact. (DelRoccili Decl. at 6-8; 23-25; 27-29.)

Defendants filed a response to plaintiffs' motion for class certification on June 20, 2006. (Opp'n to Mot. for Class Certification [359]). In their response, defendants challenged

6

plaintiffs' ability to demonstrate class-wide impact using either methodology proposed by DelRoccili.

In the meantime, with plaintiffs' motion for class certification pending, plaintiffs filed Dr. Leitzinger's ("Leitzinger") expert report on liability. ("Letzinger Report" attach. as Ex. 1 to "Def. Proposed Supplemental Brief in Opp'n to Mot. for Class Certification" [379].)   The Leitzinger Report stated that "[p]laintiffs now propose to limit the class definition to those contractors for whom statistical 'before and after' analysis of the available electronic transaction data yields evidence of impact for an affected period of January 1, 1999 to December 31, 2003." (Leitzinger Report at ¶ 5.) Leitzinger's Report attempted to identify those contractors who experienced a measurable increase in their price spreads over Masco as a result of the alleged conspiracy. (Leitzinger Report at ¶¶ 103–113; "Revised Class List" attach. as Ex. 3 to Def's Proposed Supplemental Brief in Opp'n to Mot. for Class Certification)   In order to determine whether a contractor experienced a statistically significant spread, Leitzinger utilized a "before and after" analysis in which he compared two years that were allegedly less affected by the conspiracy (1998 and 2004) with a four-year period that was allegedly most affected by the conspiracy (1999–2003.)   (*Id.*)

In response to the Leitzinger Report, defendants Masco and Knauf filed an Emergency Motion for Leave to File a Supplemental Brief in

7

Opposition to Plaintiffs' Motion for Class Certification ("Emerg. Mot. for Leave to File Supplemental Brief in Opp'n to Mot. for Class Certification" [379].)   On October 17, 2006, plaintiffs filed a Response and a Notice of Amending Proposed Class Definition. ("Response to Opp'n to Supplemental Brief in Opp'n to Class Certification and Notice of Am. Proposed Class Definition." [387].)

Through their October 17, 2006 submission, plaintiffs gave notice to the Court of their intent to seek approval of a litigation class defined as those contractors set out in Leitzinger's Revised Class List. ("Opp'n to Supplemental Brief in Opp'n to Class Certification and Am. Proposed Class Definition" [387].)   The proposed amended class makes two significant changes to plaintiffs' May 22nd class certification motion.   First, the revised class only includes a subset of the original class of contractors purchasing from 2000 through 2004 and does not include any contractors who only made purchases in 2004.   Second, the revised class definition commences in 1999 rather than 2000, and includes approximately 30 additional contractors who made purchases only during 1999, rather than after January 1, 2000.   (*Id.* at 2-3.)

On November 8, 2006, Masco filed a Motion to File Reply in Support of Defendants' Supplemental Brief in Opposition to Plaintiffs' Motion for Class Certification.   ("Mot. To File Reply" [391].)   Plaintiffs filed a response on November 14, 2006.   ("Pl's

8

Response to Mot. to File Reply" [393].)

B.    **The Settlement Class**

In the meantime, with plaintiffs' original Motion for Class Certification pending on a litigation class definition that the plaintiffs had since abandoned, plaintiffs began filing several motions seeking the Court's preliminary approval of settlements with most of the defendants.  First, on September 11, 2006, plaintiffs filed a Motion for Preliminary Approval of Settlements with Guardian and Johns Manville.  ("First Mot. for Prelim. Approval of Settlement" [376].)   Masco opposed plaintiffs' First Motion for Preliminary Approval of Settlement on October 12, 2006.   (Opp'n to Mot. for Prelim. Approval of Settlement [384].)

Then, on January 19, 2007, plaintiffs informed the Court that they had also reached a settlement agreement with defendant Knauf, and sought approval of a settlement class and provision of notice with respect to defendants Guardian, Johns Manville and Knauf. ("Second Mot. for Prelim. Approval of Settlement" [404].)

Less than a month later, plaintiffs informed the Court that they had reached a settlement with CertainTeed, and they filed a Motion for Preliminary Approval of Settlement with CertainTeed and Supplement to Plaintiffs' Prior Motion for Preliminary Approval of Settlements with Guardian, Johns Manville and Knauf.  ("Third Mot. for Prelim. Approval of Settlement" [412].)  The proposed settlement

9

calls for Guardian to pay $4.5 million; Johns Manville to pay $8 million; Knauf to pay $2.25 million, and CertainTeed to pay $22.5 million into a fund for the benefit of the Settlement Class. (Second Mot. for Prelim. Approval of Settlement at 12; Third Mot. for Prelim. Approval of Settlement at 1.)   If approved, the total settlement fund will equal $37.25 million. (Third Mot. for Prelim. Approval of Settlement at 1.)   The proposed settlement with Guardian also imposes certain protections and remedies against retaliatory pricing based on their initiation of this lawsuit. (Second Mot. for Prelim. Approval of Settlement at 3.)

Defendant Masco opposes approval of the proposed settlement class agreed to by its settling co-defendants.  Much of the dispute focuses on plaintiffs' decision to seek certification of a broader settlement class than that class now set out for litigation against defendant Masco.[1]  Plaintiffs define the class as follows:

> "All residential insulation contractors, excluding the Defendants or any of their affiliates, who, during the period from January 1, 1999, through December 31, 2004, purchased fiberglass insulation suitable for residential installation directly from Johns Manville; CertainTeed Corp.; Knauf Insulation GmbH; Guardian Fiberglass, Inc.; Guardian Building Products Distribution, Inc.; and/or Owens Corning Corp."

---

[1]  As noted, plaintiffs originally sought to certify a class identical to the class proposed in their January 19, 2007 motion, except that plaintiffs now seek to certify a class commencing on January 1, 1999, rather than January 1, 2000. (First Mot. for Prelim. Approval of Settlement at 5; Second Mot. for Prelim. Approval of Settlement at 3-4.)

10

(Second Mot. of Prelim. Approval of Settlement at 3-4.)

Plaintiffs' proposed settlement class definition does not limit the settlement class to the 377 contractors identified in Lietzinger's Report, and it is nearly identical to their original proposed litigation class definition, except that the settlement class commences on January 1, 1999 rather than January 1, 2000. (*Id.*)

Defendant Masco filed a motion to stay plaintiffs' Motion for Preliminary Approval of Settlements with Guardian, Johns Manville and Knauf and plaintiffs' Motion for Preliminary Approval of Settlement with CertainTeed and Supplement to plaintiffs' Motion for Preliminary Approval of Settlements with Guardian, Johns Manville and Knauf. ("Mot. to Stay Motions for Prelim. Approval of Settlements" [424].) The motions for preliminary approval for settlement class as to the settling defendants was discussed at length at an oral argument held on May 16, 2007.  Preliminary Approval of Settlements and Masco's Motion to Stay are thus now pending before this Court.

### Discussion

### I.   **Plaintiffs' First Motion for Class Certification**

Initially, plaintiffs filed a motion to certify a class of all contractors who purchased residential fiberglass insulation between January 1, 2000 and December 31, 2004 (Mot. for Class Certification at 1).  Specifically, plaintiffs defined the class as:

"All residential insulation contractors, excluding the
defendants or any of their affiliates, who, during the
period from January 1, 2000 through December 31, 2004,
purchased fiberglass insulation suitable for residential
installation directly from Johns Manville; CertainTeed
Corp.; Knauf Insulation GmbH; Guardian Fiberglass Inc.;
Guardian Building Products Distribution, Inc.; and/or
Owens Corning Corp. ("the Manufacturers").

(Mot. for Class Certification at 1.)

Subsequent to this motion, plaintiffs filed an amendment, and
sought approval, of a different class definition based upon the
expert report of Dr. Leitzinger. ("Resp. to Supplemental Brief in
Opp'n to Class Certification and Notice to Amend Prop. Class
Definition" [387].) The amendment seeks to certify a class of
"contractors for whom statistical 'before and after' analysis of the
available electronic transaction data yields evidence of impact for
an affected period of January 1, 1999 to December 31, 2003."
(Leitzinger Report at 2.) Plaintiffs now seek to limit the
litigation class to the 377 specified contractors for whom Leitzinger
identified a common statistical method for demonstrating and
quantifying antitrust injury. (Id.)

The Eleventh Circuit has held that Federal Rule of Civil
Procedure 23(c)(1) ("Rule 23(c)(1)") grants district courts broad
discretion to alter or amend the definition of a class at any time
throughout the litigation, prior to a final decision on the merits.
Prado-Steiman v. Bush, 221 F.3d 1266, 1273 (11th Cir. 2000). In

12

O 72A
Rev.8/82)

fact, courts often certify amendments to a class definition that arise well after plaintiffs submit their class certification motions. *See Shin v. Cobb County Bd. of Educ.*, 248 F.3d 1061, 1064 (11th Cir. 2001) (district judge must "'define, redefine, subclass, and decertify as appropriate in response to the progression of the case from assertion to facts'") (internal quotation omitted); *In Re Polypropylene Carpet Antitrust Litig.*, 996 F. Supp. 18, *21-22 (N.D. Ga. 1997) (court certified class after plaintiffs responded to concerns raised by the court and altered their proposed class definition by eliminating certain defendants and clarifying the definition of "polypropylene carpet"); *Turner v. Murphy Oil USA, Inc.*, 234 F.R.D. 597, 611 (E.D. La. 2006) (court disagreed with defendant's contention that the court had to certify plaintiffs' proposed class definition, or no class at all, citing *In re: Monumental Life Ins. Co.*, 365 F. 3d 408, 414 (5th Cir. 2004), which states that class definition is a process of "'ongoing refinement and give-and-take[,]'" and as such a district court's role is to define a precise class.)

Here, plaintiffs attempted to redefine the litigation class in an expert report filed by Leitzinger, who was plaintiff's expert on liability. Plaintiffs did not formally request leave of the Court to amend or alter their class definition. In fact, it was not until defendants indicated in an opposition pleading that plaintiffs were

13

attempting to change their litigation class definition mid-stream, that plaintiffs sent notice to the Court formally alerting it to the fact that the class definition had now changed.

By failing to properly seek leave of the Court to file an amended class definition, defendants have been unable to submit a reply or expert declaration regarding plaintiffs' entirely new class definition.   The Court concludes that any ruling on plaintiffs' amended class definition, given this chronology of events, presents grave prejudice to defendants, including a potential due process violation.

Accordingly, the Court **DENIES, without prejudice**, plaintiffs' First Motion for Class Certification [347].  At the conclusion of the oral argument proceeding in May, the Court orally indicated that it would be denying the plaintiffs' First Motion for Class Certification and that plaintiffs would be directed to file a new motion.   They have now done so, filing their Renewed Motion for Class Certification [475] on June 29, 2007.

II. **Plaintiffs' Proposed Settlement Class**

    A.    **Defendants' Objections to the Court's Preliminary Approval of the Settlement Class**

Defendant Masco argues that the Court should defer preliminary approval of the settlement class until it has reached a decision

14

concerning plaintiffs' motion to certify the litigation class.[2]   At
the outset, the Court notes that, Masco, a non-settling defendant,
does not have standing to object to a class settlement with the
settling defendants, unless Masco can show "plain legal prejudice."
*In re Beef Ind. Antitrust Litig.*, 607 F.2d 167, 172 (5th Cir.) (as a
non-settling defendant, defendant is not prejudiced and has no
standing to object); *Smith v. Arthur Andersen LLP*, 421 F.3d 989, 998
(9th Cir. 2005) (general exception to the rule that non-settling
defendant may not object to settlement where defendant can
demonstrate that it will sustain formal legal prejudice as result of
the settlement); *Mayfield v. Barr*, 985 F.2d 1090, 1092-93 (D.C. Cir.
1993) (same); *In re Vitamins Antitrust Class Actions*, 215 F.3d 26, 31
(D.C. Cir. 2000) (same); *Wainright v. Kraftco Corp.*, 53 F.R.D. 78, 81
(N.D. Ga. 1971) (non-settling defendants have no standing to object
to a proposed settlement) (internal citation omitted).

Here, Masco, contends that any decision by the Court on
plaintiffs' motion for preliminary approval of the settlement class

_____

    [2]  Because plaintiffs' First Motion for Preliminary Approval of
Settlements [376] and plaintiffs' Second Motion for Preliminary
Approval of Settlements [404] have, in essence, been superceded by
plaintiffs' Third Motion for Approval of Settlements, the Court
**DENIES as moot** plaintiffs' First Motion for Preliminary Approval of
Settlement with Guardian and Johns Manville [376] and plaintiffs'
Second Motion for Preliminary Approval of Settlement with Guardian,
Johns Manville and Knauf [404].   The Court will instead issue a
ruling on plaintiffs' Motion for Proposed Settlement with Guardian,
Johns Manville, Knauf and CertainTeed [412].

15

will impact the Court's decision regarding the amended litigation class definition.   Thus, Masco's concerns appear to be mainly strategic.   While understanding Masco's concern, the Court concludes that preliminary approval of the settlement class will not affect its decision regarding the redefined litigation class.   In approving the settlement class, the Court is not endorsing any evidence or arguments that the parties will submit in connection with plaintiffs' redefined litigation class.   Rather, the Court's decision regarding the settlement class rests solely on the uncontested evidence presented by plaintiffs and the settling defendants.   In short, certification of the settlement class will not have preclusive effect on defendant Masco in contesting the litigation class.

## B.   **Plaintiffs' Proposed Settlement Class Meets the Requirements of Federal Rule of Civil Procedure 23(a)**

In order to certify the settlement class, the Court must examine whether the settlement class complies with Rule 23. *See Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 620 (1997) (approving certification of classes for settlement purposes only, but holding that courts must ensure that the class complies with the requirements of Rule 23(a) and (b)).   The Court will, therefore, engage in an independent analysis to determine whether plaintiffs' proposed settlement class complies with Rule 23(a) and (b).

Rule 23(a) provides as follows:

16

**(a) Prerequisites to a Class Action.** One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. FED. R. CIV. P. 23(a).

Rule 23(b) provides as follows:

**(b) Class Actions Maintainable.** An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

(1) the prosecution of separate actions by or against individual members of the class would create a risk of

(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is

17

> superior to other available methods for the
> fair and efficient adjudication of the
> controversy. The matters pertinent to the
> findings include: (A) the interest of members
> of the class in individually controlling the
> prosecution or defense of separate actions;
> (B) the extent and nature of any litigation
> concerning the controversy already commenced
> by or against members of the class; (C) the
> desirability or undesirability of
> concentrating the litigation of the claims in
> the particular forum; (D) the difficulties
> likely to be encountered in the management of
> a class action.

For plaintiffs to establish that an action should proceed as a class action under Rule 23, they must first establish that the four prerequisites of Rule 23(a)--numerosity, commonality, typicality, and adequacy of representation--are met. *See Amchem,* 521 U.S. at 613; *Prado-Steiman v. Bush,* 221 F.3d at 1278. If plaintiffs can establish the four Rule 23(a) factors, they must also establish that *one* of the three requirements of Rule 23(b) is met. *Franze v. Equitable Assurance*, 296 F.3d 1250, 1253 (11th Cir. 2002) (internal citation omitted).

Additionally, the party seeking certification bears the burden of establishing each of the prerequisites under Rule 23. *Cooper v. Southern Co.*, 205 F.R.D. 596, 607-608 (N.D. Ga. 2001) (internal citations omitted). It is plaintiffs' burden to establish they have satisfied each of Rule 23's certification requirements. *In re Domestic Air Transp. Antitrust Litig.*, 137 F.R.D. 677, 683 (N.D. Ga.

18

1991).   The  court  may  not  inquire  whether  plaintiffs  adduced sufficient  evidence  to  prevail  on  the  merits  of  their  antitrust claims.   *In re Polypropylene Carpet Antitrust Litig.*, 178 F.R.D. 603, 610 (N.D. Ga. 1997) (internal citations omitted).  However, the court must   conduct   a   "rigorous   analysis"   of   plaintiffs'   proffered arguments.   (*Id.*) (internal citations omitted).   Courts engaging in this inquiry may look beyond the pleadings to evidence generated in discovery regarding the class certification issue.  (*Id.*)  (internal citations  omitted).   Thus,  the  courts  in  the  Northern  District  of Georgia have held that it will examine whether plaintiffs may proceed as  a  class  action,  and  not  whether  plaintiffs'  evidence  can  withstand all factual challenges made by defendants.  (*Id.* at 611.)

The Court concludes that plaintiffs' proposed settlement class adequately complies with the Rule 23(a) requirements.

### 1. **Numerosity**

Rule  23(a)(1)  requires  that  the  class  be  "so  numerous  that joinder of all members is impracticable."  FED. R. CIV. P. 23(a)(1). In order to demonstrate numerosity, plaintiffs need not prove that joinder is impossible; rather, plaintiffs "need only show that it would be extremely difficult or inconvenient to join all members of the class."  *Anderson v. Garner*, 22 F. Supp. 2d 1379, 1384 (N.D. Ga. 1997).  Practicability of joinder depends on factors such as the size of the class, ease of identifying its members and determining their

addresses, ease of making service on them if joined, and their geographic dispersion. *Kilgo v. Bowman Transp., Inc.*, 789 F.2d 859, 878 (11th Cir. 1986) (internal citation omitted).

The proposed settlement class does not specify the number of plaintiffs in the potential settlement class. Based on the transaction data produced by the manufacturer defendants, however, plaintiffs presume that the class will include hundreds of direct purchasers of fiberglass insulation. Moreover, plaintiffs' broad class definition, including "all residential insulation contractors" who purchased fiberglass insulation suitable for insulation from the manufacturers between 1999 through 2004, will likely include hundreds of plaintiffs. *See In re Relafen Antitrust Litig.*, 218 F.R.D. 337, 342 (D. Mass. 2003) ("while the direct purchaser plaintiffs have not yet identified all class members, their broadly drawn class definition--all persons or entities who purchased Relafen directly from SmithKline during a four-year period--suggests that members of the class, once identified, will be 'so numerous and widely dispersed that joinder...is impracticable.'") (internal quotation omitted). Thus, the Court concludes that it would be wholly impracticable, if not impossible, to join individual members of a class of this potential size and geographic diversity.

### 2. **Commonality**

Rule 23(a)(2) requires one or more "questions of law or fact

20

common to the class." FED. R. CIV. P. 23(a)(2).  Courts have held that
commonality is readily met for plaintiffs alleging violations of
antitrust laws.  *Amchem*, 521 U.S. at 625 ("Predominance is a test
readily met in certain cases alleging consumer or securities fraud or
violations of the antitrust laws.")  Additionally, courts have held
that allegations concerning an alleged price-fixing conspiracy
typically present important questions sufficient to satisfy the
commonality requirement.  *In re Domestic Air Transp. Antitrust
Litig.*, 137 F.R.D. 677, 699 & n. 3 (N.D. Ga. 1991) ("price-fixing
allegations are often viewed as central or overriding issues
establishing a common question".)

In the present case, plaintiffs will raise common questions of
law and fact regarding the existence, nature, and scope of the
alleged conspiracy.  Given the overlapping nature of plaintiffs'
conspiracy claims, the Court concludes that plaintiffs have met the
minimal showing required to establish commonality of legal and
factual questions.

### 3. **Typicality**

Plaintiffs can meet the typicality requirement by establishing
that the claims and defenses of the representative parties are
typical of the claims and defenses of the class.  FED. R. CIV. P.
23(a)(3).  "'[T]ypicality measures whether a significant nexus exists
between the claims of the named representative and those of the class

21

at large." *Hines v. Widnall*, 334 F.3d 1253, 1256 (11th Cir. 2003) (internal quotation omitted).  "'Neither the typicality  nor the commonality requirement mandates that all putative class members share identical claims, and...factual differences among the claims of the putative members do not defeat certification.'" *Cooper v. Southern Co.*, 390 F.3d 695, 714 (11th Cir. 2004) (internal citation quotation omitted).  The named representatives need only share the same "essential characteristics" of the larger class.  (*Id.*) (internal citation and quotation omitted).

Here, the named class representatives, as well as the class at large, seek to demonstrate that defendants engaged in a price-fixing scheme that elevated the purchase price of fiberglass to all contractors other than Masco.  Claims and defenses of this nature will typify the class at large.  The fact that some plaintiffs may have been damaged to a greater extent by the alleged "spread" will not defeat satisfaction of Rule 23(a)(3).  *In re Vitamins Antitrust Litig.*, 209 F.R.D. 251, 261 (D.D.C. 2002) (the typicality requirement in class certification does not require that the products purchased, methods of purchase or damages of the named plaintiffs be the same as absent class members); *In re Flat Glass Antitrust Litig.*, 191 F.R.D. 472, 480 (W.D. Pa. 1999) (fact that plaintiffs may have sustained different damages does not defeat the typicality requirement where the linchpin of plaintiffs' claim is an alleged price-fixing scheme

22

and cause of those injuries arise from a common wrong.)  Because the plaintiffs will seek to establish that they purchased fiberglass insulation at higher prices than they would have paid in the absence of a conspiracy, the named plaintiffs' legal theories and factual underpinnings are typical of all plaintiffs.

### 4. **Adequacy**

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4).  This requirement involves a two-part test: (1) whether plaintiffs have interests antagonistic to the interests of the other class members; and (2) whether the proposed class' counsel has the necessary qualifications and experience to lead the litigation.  *In re Tri-State Crematory Litig*, 215 F.R.D. at 690-691. Here, the named plaintiffs, as well as the class at large will seek to demonstrate that an alleged price-fixing scheme caused them to pay higher prices than they would have paid absent the conspiracy.  The fact that the named plaintiffs may have suffered greater damages does not indicate that named plaintiffs possess interests antagonistic to other plaintiffs.  *See In re Polypropylene Carpet*, 178 F.R.D. 603, 614 (N.D. Ga. 1997) (named plaintiffs not necessarily antagonistic even though parties have varying sales volume and products.)

AO 72A
(Rev.8/82)

Defendant Masco[3] posited an argument, in their opposition to plaintiffs' motion for class certification, that the named plaintiffs cannot adequately represent the class because they seek recovery of an overcharge.   (Opp'n to Mot. for Class Certification at 42-43.) Defendants do not offer any reason, nor does the court find any reason, why all plaintiffs would not attempt to receive overcharge damages (*i.e.*, the difference between the price paid for goods purchased and the price that would have been paid absent the alleged illegal activity) versus lost profits (*i.e.*, the difference between the firm's actual profits during the alleged damage period and the damage the profits it would have received but for the illegal conduct).   *See In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 297, 309 ftn. 8 (E.D. Mich. 2001) (explaining lost profits); *Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*, 424 F.3d 363, 374 (3d Cir. 2005) *cert. denied*, 126 S. Ct. 2320 (2006) (explaining overcharge damages).

Courts have consistently recognized overcharge as the standard measure of damages in price-fixing cases.   *Howard Hess Dental Labs.*, 424 F.3d at 374 ("However, the standard method of measuring damages in price enhancement cases is overcharge, not lost profits."); *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. at 309 ("Plaintiffs'

---

[3]   Again, the remaining defendants no longer challenge class certification, at least as to the settlement class.

24

proposed overcharge measure is the most common method for determining damages in a price-fixing case"). Accordingly, this Court does not find that the named plaintiffs' attempt to recover the overcharge, rather than lost profits, renders them inadequate class representatives. Rather, the named representatives are pursuing what is considered to be the principal or standard measure of damages in price-fixing cases.

As to the second component of the Rule 23(a)(4) inquiry, defendants do not challenge the qualifications and/or experience of plaintiffs' counsel. The Court has conducted its own independent review of plaintiffs' counsel and does not question counsels' ability to represent the class. In fact, the Court appointed these lawyers as interim counsel for the class on November 1, 2004. ("November 1, 2004 Order" [4].) Over the past two years, counsel have obtained millions of pages of documents, as well as transaction data from the Manufacturers and have hired experts to analyze the data. ("Harley Decl." attach. as Ex. 96 to Mot. for Class Certification at ¶ 3; "Lowrey Decl." attach. as Ex. 97 to Mot. for Class Certification at ¶ 4.) Counsel have also represented the class in depositions, conducted depositions of witnesses, and have spent over $600,000 in expenses on behalf of the class. (*Id.*)

Masco also argues that plaintiffs' decision to seek to certify a narrower litigation than settlement class raises questions

25

AO 72A
(Rev.8/82)

regarding the counsel's adequacy of representation.  Specifically,
Masco contends that plaintiffs have abandoned their duties to absent
class members because of the varying proposed litigation and
settlement class definitions.  ("Mot. to Stay Prelim. Approval of
Settlements" [424] at 16.)  In essence, Masco questions plaintiffs'
ability to represent contractors included in the settlement, but not
litigation class, because plaintiffs would be settling out those
contractors' claims.  However, plaintiffs will provide each settling
contractor with a piece of the settlement with the manufacturers.
Moreover, the contractors may also maintain any cause of action
against non-settling defendant, Masco.  Thus, the Court does not find
that this consideration defeats certification of the settlement
class.

**B.**     **Plaintiffs' Proposed Settlement Class Meets the Requirements of Federal Rule of Civil Procedure 23(b)(3)**

**1. Issues of law and Fact Predominate**

In addition to proving the Rule 23(a) requirements, plaintiffs
must also satisfy the criteria under Rule 23(b)(3).  Rule 23(b)(3)
asks whether: (1) issues of law and fact common to members of the
class predominate over questions only affecting individual members;
and (2) whether a class action is the superior method of resolving
the dispute.  FED. R. CIV. P. 23(B)(3).

The Court must first identify the substantive law that will

26

control the outcome of the litigation before attempting to resolve these issues. *State of Ala. v. Blue Bird Body Co. Inc.*, 573 F.2d 309, 316 (5th Cir. 1978); *In re Tri-State Crematory Litig.*, 215 F.R.D. 660, 691 (N.D. Ga. 2003); *In re Domestic Air*, 137 F.R.D. at 684. The substantive law controlling the recovery of damages in this action provides that plaintiffs must prove: "(1) violation of the antitrust laws, (2) cognizable injury attributable to the violation, and (3) at least the approximate amount of the damage." *McGuire Oil Co. v. Mapco, Inc.*, 958 F.2d 1552, 1557-1558 (11th Cir. 1992); *In re Domestic Air*, 137 F.R.D. at 685.

The Court concludes that common questions predominate the inquiry regarding whether defendants violated antitrust laws. In fact, defendants do not question the utilization of a class action to establish plaintiffs' antitrust allegations in a generalized fashion. If the class were not certified, each individual plaintiff would have to prove the existence, scope and nature of the alleged price-fixing conspiracy. Because these allegations would raise the same issues for each plaintiff, the Court finds that common questions predominate over individual ones with respect to plaintiffs' ability to prove an antitrust violation.

However, in order to recover damages, a class must be able to prove that it suffered a "cognizable injury attributable to the violation" committed by defendants. *McGuire Oil*, 958 F.2d at 1557.

27

This element is often referred to as the "fact of injury" or "impact." In the present case, defendants mounted a sweeping argument that plaintiffs fail to meet the Rule 23(b)'s predominance requirement because they cannot demonstrate antitrust impact through generalized proof.[4]

Plaintiffs rely on the report of Dr. DelRoccili, a Ph.D. economist, to demonstrate individualized impact through common proof. In essence, plaintiffs theorize that Masco orchestrated a conspiracy involving at least the five Manufacturers to maintain a price "spread" between the prices Masco pays for fiberglass insulation and the prices paid by other purchasers, including the class members. DelRoccili supports this theory and opines that the price "spread" would impact all class members because it would interfere with "natural competitive forces" and ultimately cause the prices paid by all contractors except Masco to be higher than expected if there were no artificial intervention. (DelRoccili Decl. at 6-8; 22-23.)

Defendant Masco has mounted a very powerful and persuasive attack against use of Dr. DelRoccili's analysis to support a common impact. The Court will consider carefully Masco's objections, to the

---

[4]    This argument was made in defendants' opposition to plaintiffs' motion for class certification. Again, because plaintiffs' motion for preliminary approval of the settlement class mirrors plaintiffs' original litigation class, except for the commencement date, these arguments are equally applicable to plaintiffs' proposed settlement class.

AO 72A
(Rev.8/82)

extent they remain relevant, when the Court considers the plaintiffs'
motion to certify a litigation class.    For now, however, the
defendants with standing to object to the settlement class do not
object.

In addition, even *Amchem* notes that the fact of settlement is
relevant to the decision to certify a class.    *Amchem*, 521 U.S. at
619.    Courts have, thus, certified classes at the settlement stage
noting that such a certification does not present the same problems
that certification of a litigation class proposing the same class
definition would present.    For example, in *O'Keefe v. Mercedes-Benz
USA, LLC*, 214 F.R.D. 266, 292 (E.D. Pa. 2003), the court certified a
settlement class where plaintiffs had not proposed a formula for
dealing with damages issues, and there were several issues that would
have complicated certification of a litigation class.    There, the
class members suffered a variety of damages: some members had readily
quantifiable damage, while others did not.    However, the court noted
that because it was certifying a settlement class, it was appropriate
to examine how the settlement could resolve these individual issues.
(*Id.* at 292.)    *See also In re Diet Drugs*, Nos. 1203, 99-20593, 2000
WL 1222042, at *43 (E.D.Pa. Aug.28, 2000) ("[W]hen taking the
settlement into consideration for purposes of determining class
certification, individual issues which are normally present in
personal injury litigation become irrelevant, allowing the common

29

issues to predominate." )

Additionally, in *In re Motorsports Merchandise Antitrust Litig.*, 112 F. Supp. 2d 1329 at 1334 (N.D. Ga. 2000), Judge Thrash concluded that the fact that antitrust injury could not easily be proved in the case at hand, argued in favor of certifying a settlement class. The court noted that defendants' vigorously attacked plaintiffs' statistical model for proving damages, and the facts suggested that proof of antitrust impact would require individualized examinations. (*Id.*) Thus, the court held that a serious question remained regarding plaintiffs' chance of obtaining class certification. Without such certification, the court argued, plaintiffs' case would likely fail. (*Id.*) The Court found that these factors argued in favor of certifying a settlement class, as it made recovery for plaintiffs more likely.

In the present case, the settlement context alleviates some of the issues that would have appeared had this class been certified as a litigation class. Because the Court need not consider whether the class will present intractable management problems at litigation, the Court finds that it may certify the settlement class. Furthermore, this Court, like the *Motorsports* court, concludes that sufficient questions remain regarding the ability of the plaintiffs to ultimately certify a class. However, this factor actually provides this Court further reason to certify the settlement class. The

AO 72A
(Rev.8/82)

settling defendants have agreed to provide the proposed class over 37 million dollars in damages for a class that may never have been certified and whose members may never have recovered any money had they proceeded individually.   The Court concludes that, based upon the posture of this case, such a settlement is reasonable.

Finally, during oral argument the settling defendants indicated that they would only settle the action if all potential class plaintiffs were included in the settlement class.  Thus, even though the amended litigation class will present a narrower class for the Court's consideration, the settling defendants did not find this class definition acceptable for settlement purposes.  Therefore, though a greater number of individual inquiries may present themselves within the settlement class, the Court finds that the settling defendants' desire to attain a full and complete settlement lends further support for certifying a broader settlement class.  The Court can decertify the class if it later determines that the settlement class is no longer sustainable.  Accordingly, for all the above reasons, the Court determines that individual issues regarding antitrust impact do not preclude certification of the settlement class.

The third prong in this antitrust action deals with the amount of damages each class member incurred.  The Court concludes that plaintiffs have satisfied their burden, and have presented a viable

AO 72A
(Rev.8/82)

method for proving damages. As previously noted, plaintiffs plan to utilize a regression analysis in order to determine actual damages. The Court concludes that DelRoccili's proposed methodology meets the minimum burden required of plaintiffs at the class certification stage.

### 2. **Superiority of Settlement Class**

The Court concludes that settling this action as a class would be beneficial. A class action ensures greater efficiency and consistency of results. In particular, the class action will prevent wasteful, duplicative actions that will raise the same issues and questions of law. Most importantly, class treatment in this context is also beneficial because it grants plaintiffs a definite recovery. Absent this method of relief, each settling plaintiff would have to pursue an individual action and risk receiving no recovery. Defendant Masco has made clear the obstacles facing plaintiffs on liability questions, as well as on class certification issues. For these reasons, the Court concludes the class action is a superior method for resolving a problematic claim when the defendants, themselves, agree to pay the plaintiffs substantial amounts of money.

### C. **Fairness of the Proposed Settlement**

In addition to complying with Rule 23(b)(3), the Court must determine whether the proposed settlement is fair, reasonable, adequate and free of collusion. Federal Rule of Civil Procedure

32

23(e) ("Rule 23(e)") requires courts to approve the settlement of class actions, but does not offer any guidance regarding the factors a district court judge should apply in considering the proposed settlement. *In re Motorsports Merchandise Antitrust Litig.*, 112 F. Supp. 2d at 1333. However, the Eleventh Circuit has held that a court should certify a settlement if it is fair, reasonable, adequate and free of collusion. (*Id.*) (citing *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984)). In reviewing proposed settlements, courts should also be bear in mind the judicial policy favoring settlements. (*Id.*)  (internal citations omitted.)

In determining whether the proposed settlement protects the interests of the absent class members, the court should consider: "(1) the likelihood of success at trial; (2) the range of possible recoveries; (3) the point on or below the range of possible recoveries at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and degree of opposition to the settlement; and (6) the stage of the proceedings at which the settlement was achieved." *Bennett v. Behring Corp.,* 737 F.2d 982, 986 (11th Cir. 1984) (internal citations omitted).

### 1.  The Likelihood of Success at Trial

The Court must first assess whether plaintiffs are likely to

33

succeed at trial.  Because plaintiffs' settlement proposal does not include Masco, the Court will not delve into a lengthy discussion regarding the merits of the dispute.  That analysis awaits resolution of Masco's summary judgment motion.  Suffice it to say, courts have found that antitrust actions generally present complex, novel issues, and that plaintiffs can rarely guarantee recovery at trial.  *See In re Motorsports*, 112 F. Supp. 2d at 1337 ("An antitrust class action is arguably the most complex action to prosecute.  The legal and factual issues involved are always numerous and uncertain in outcome.")  Thus, given the nature of plaintiffs' claims, the Court concludes that their efforts to settle the claims are reasonable.

### 2.   The Range of Possible Recovery at Which Settlement is Fair, Adequate, and Reasonable

In determining whether a settlement is fair and reasonable, the court must also examine the range of possible damages that plaintiffs could recover at trial and combine this with an analysis of plaintiffs' likely success at trial to determine if the settlements fall within the range of fair recoveries.  *In re Motorsports*, 112 F. Supp. 2d at 1334 (internal citations omitted).  Here, plaintiffs propose settlements with Johns Manville, Guardian Knauf, and CertainTeed (the "Settling Defendants").  Under the terms of the settlement, the Settling defendants will pay a total of $37.25 million to a fund for the benefit of the settlement class.  Again,

34

antitrust actions are generally complex and the potential for recovery at trial uncertain because the present proposal provides an immediate and substantial benefit to class members, the proposal seems reasonable.   In addition, in the absence of a settlement, plaintiffs will continue expending a great deal of time and money to attempting to recover a judgment that may not succeed or result in any larger recovery.   Based on the contingencies involved with continued litigation, the Court finds that the proposed settlements are within the range of possible recoveries.

### 3.   The Point on or Below the Range of Possible Recovery at which a Settlement is Fair, Adequate, and Reasonable

To determine whether a proposed settlement falls within the range of reasonableness, a court must analyze the total value to the settlement class. As aforementioned, the settlement proposes paying the settling plaintiffs a total amount of $37.25 million.   Though this number does not represent a large fraction of the potential recovery at trial, district courts have approved settlements equaling a small fraction of the potential recovery at trial because of the inherent uncertainty in antitrust actions.   In *Domestic Air*, 148 F.R.D. at 325, the court approved a comprehensive settlement equal to 12.7 to 15.3 percent of the potential recovery before trebling.   *See also Linerboard Antitrust Litig.*, 296 F. Supp. 2d 568, 581 & n.4 (E.D. Pa. 2003) (collecting cases approving antitrust settlements for

35

low fractions of potential recovery); *In re Currency Conversion Fee Antitrust Litig.*, No. 01 MDL 1409, 2006 WL 3247396 at *6 (S.D.N.Y. Nov. 8, 2006) (approving settlement of "roughly 10-15%" of the allegedly illegal fees collected from the class.)

### 4.   The Complexity, Expense and Duration of the Litigation

As noted above, antitrust actions are extremely difficult, complex, and the outcome is often certain.   This case began in October, 2004, and plaintiffs' counsel have advanced well over $600,000 in expenses on behalf of the class.   (Lowery Decl. at ¶ 4.) The expenses associated with this action will only grow if the litigation proceeds.

On the other hand, the settlement offers plaintiffs the opportunity to obtain an immediate, certain recovery of $37.25 million.   Plaintiffs do not have any guarantee that they will receive a larger recovery from the Settling Defendants were they to forego the settlement offer.   Accordingly, the court finds that the settlement offer is fair and reasonable, given the uncertainty of the case and the time and money devoted to this action thus far.

### 5.   Substance and Degree of Opposition to the Settlement

In determining whether to certify a settlement class, a court must also examine the degree of opposition to the settlement. Here, because no notice has yet been provided to the class members, the Court cannot assess whether there are any objectors.   The Court will

36

address this issue in further detail once notices are received by the class, and if any of the class members object.

### 6. <u>The Stage of Proceedings at which the Settlement was Achieved</u>

Thus far plaintiffs have completed seventeen months of discovery. In that time plaintiffs have taken numerous depositions, obtained millions of documents, including manufacturers' transaction databases, and retained experts to analyze the retrieved data. ("Second Mot. for Prelim. Approval of Settlements".)  The Eleventh Circuit has approved settlements at even earlier stages of the litigation.  *Cotton v. Hinton*, 559 F.2d 1326, 1332 (5th Cir. 1977) (affirming approval of settlement with little formal discovery); *Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 660, 669 (M.D. Ala. 1988) (holding that early settlements are to be encouraged, and accordingly, only some reasonable amount of discovery is required to determine the fairness of the settlement.)  Additionally, the settlement negotiations have spanned well over one year.  (Second Mot. for Prelim. Approval of Settlements at 23-24.)  The Court, therefore, concludes that a settlement here is not premature.

### D. <u>The Side-Agreements</u>

In its latest filing, Masco argues that the Court should not approve plaintiffs' proposed settlements because plaintiffs have not disclosed all side agreements identified pursuant to Rule 23(e)(2).

37

("Mot. to Stay Prelim. Approval of Settlements" at 17-18.)    Masco

argues that plaintiffs have inappropriately withheld from the public

the terms of "termination agreements," which allow a defendant to

terminate its settlement if opt-outs by settlement class members

reach certain thresholds.   (Second Mot. for Prelim. Approval of

Settlements at 3 ftn. 1.; Mot. to Stay Prelim. Approval of

Settlements" at 17-18.)  The Advisory Committee's 2003 Notes indicate

that  Rule  23(e)(2)  is  meant  to  ensure  that  parties  disclose

undertakings related to a class action settlement because such "side

agreements" may have influenced the terms of the settlement by

trading  away  possible  advantages  for  the  class  in  return  for

advantages  for  others.   However,  the  Note  also  indicates  that

"[f]urther inquiry into the agreements identified by the parties

should  not  become  the  occasion  for  discovery  by  the  parties  or

objectors."  FED. R. CIV. P. 23(e), 2003 Advisory Committee Note,

Subdivision (e).

Upon request by the Court, plaintiffs submitted the termination

agreements for an *in camera* review by the Court.   The Court has

reviewed these agreements and does not find that plaintiffs have

bargained away rights of the class in return for advantages of

others.    Rather,  the  agreements  merely  provide  a  point  where

defendants can unilaterally terminate the agreement if the opt-outs

reach a certain threshold.  Based on this review, the Court does not

find it necessary to make these agreements public.

### E.   __Proposed Schedule for Settlement Approval__

The Court hereby adopts plaintiffs' proposed order addressing the schedule and course of proceedings for settlement.  The Settling Defendants have not raised any objections to the proposed order.[5]

In addition, the court must direct notice of the proposed settlement in a reasonable manner to all class members.  FED. R. CIV. P. 23(e).  Plaintiffs proposed mailing individual class members using the addresses in the manufacturers' database and supplementing this notice with a summary form of the notice in three trade journals used by insulation contractors as well as USA Today.  The Settling Defendants do not object to plaintiffs' proposed form of notice.  The Court, independently, finds that this method will effectively reach the class members.

However, as noted at oral argument, the Court was concerned that plaintiffs' proposed notice did not adequately inform the Settling Defendants of the amount of potential recovery.  Thus, the Court directed plaintiffs to include more detailed information regarding the formula plaintiffs plan on using for distributing the settling funds, and to provide some indication as to the amount or percentage

---

[5]  The parties shall promptly present a clean copy of this order, for the Court's signature, now that preliminary approval of the settlement has occurred.

39

certain plaintiffs may obtain.

Plaintiffs have now done so.   The Court concludes that the proposed notice submitted by plaintiffs and the settling defendants clearly and fairly sets out the necessary information for potential class members, and the Court approves it.   Further, the Court preliminarily approves the Settlements, subject to further consideration at the Settlement Hearing to be held on a date to be proposed by the parties.   The proposed Settlement Classes are certified consistent with the settling parties' proposed class definitions, and for the purposes of the proposed settlement only. The proposed Class Representatives are certified as Class Representatives, for purposes of the proposed settlement only. Finally, the proposed Class Counsel for the Settlement class is approved.

The Court directs that plaintiffs and the settling defendants submit a proposed scheduling order for all remaining events, as set out in previous submissions or modified, if the parties seek to change any timeframe, by **August 3, 2007**.   At that time, the Court will issue an Order regarding the mailing of the proposed notices.[6]

---

[6] The Court understands that plaintiffs needed approval by July 27, 2007.   The Court will make itself available to sign any further necessary orders in advance of that date.

AO 72A
Rev.8/82)

**CONCLUSION**

For the foregoing reasons, the Court **DENIES without prejudice** plaintiffs' Motion for Class Certification [347]; **DENIES as moot** defendants' Motion for Leave to File a Supplemental Brief in Opposition to Plaintiffs' Motion for Class Certification [379]; **DENIES as moot** defendants' Motion to File Reply in Support of Defendants' Supplemental Brief in Opposition to Plaintiffs' Motion for Class Certification [391]; **DENIES as moot** plaintiffs' Motion for Preliminary Approval of Settlement with Guardian and Johns Manville [376]; **DENIES as moot** plaintiffs' Motion for Preliminary Approval of Settlements with Guardian, Johns Manville and Knauf [404]; **GRANTS** plaintiffs' motion for Preliminary Approval of Settlement with CertainTeed and Supplement to Plaintiffs' Prior Motion for Preliminary Approval of Settlements with Guardian, Johns Manville and Knauf [412]; and **DENIES** Masco's Motion to Stay plaintiffs' Motion for Preliminary Approval of Settlements with Guardian, Johns Manville and Knauf and plaintiffs' Motion for Preliminary Approval of Settlement with CertainTeed and Supplement to plaintiffs' Motion for Preliminary Approval of Settlements with Guardian, Johns Manville and Knauf [424].

Plaintiffs and the settling defendants shall submit a proposed Scheduling Order by **August 3, 2007.**

AO 72A
(Rev.8/82)

SO ORDERED, this _20_ day of July, 2007.


JULIE E. CARNES
UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)