## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| COLUMBUS DRYWALL & INSULATION, INC., *et al.*, on behalf of a class of similarly situated persons, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTION FILE |
| v. | ) ) | NO. 1:04-cv-3066-JEC |
| MASCO CORPORATION, *et al.*, | ) ) ) | |
| Defendants. | ) | |

## PLAINTIFFS' PROPOSED JURY INSTRUCTIONS

Pursuant to the Court's order dated August 23, 2010, plaintiffs submit these Proposed Jury Instructions. In accordance with Local Rule 51.1(B), plaintiffs have when possible drawn these charges from the latest edition of the Eleventh Circuit District Judges Association's Pattern Jury Instructions and then from O'Malley's Federal Jury Practice and Instructions. Plaintiffs have supplemented these sources with charges drawn from American Bar Association Section of Antitrust Law, Model Jury Instructions in Civil Antitrust Cases (2005 ed.). With respect to those charges not found in the Eleventh Circuit pattern charges or O'Malley, plaintiffs have included annotations to supporting authority.

824949.1

## PRELIMINARY INSTRUCTIONS

Plaintiffs request that the Preliminary Instructions contained in the Eleventh Circuit Pattern Jury Instructions (Civil Cases), 2005, should be given to the jury with the following revisions:

1.    Plaintiffs request that the jury be instructed that note taking is permitted.

2.    Plaintiffs submit that the bracketed portion of the Preliminary Instructions regarding visiting the scene of event is not necessary and should be omitted.

824949.1

## PLAINTIFFS' PROPOSED INSTRUCTION NO. 1

### *Basic Instructions – Nature of this Action*

This is a "class action."  A class action is a type of lawsuit used to avoid duplication of effort and expense in which one or more representative plaintiffs sue on behalf of an entire group of claimants who are similarly situated.

Here, the class representatives are Columbus Drywall & Insulation, Delmarva Insulation, Devere Insulation, Leo Jones Insulating, Southland Insulation and Whitson Insulation.  The claims made by these six class representatives are likewise made on behalf of each of the class members.  The class members that they represent, that is, the group of claimants who are similarly situated, are 377 residential insulation contractors who, between January 1, 1999 and December 31, 2003, bought fiberglass insulation directly from one of the five major domestic insulation manufacturers – CertainTeed Corporation, Guardian Fiberglass, Johns Manville, Owens Corning, and Knauf Insulation.  Plaintiffs claim that these 377 residential insulation contractors were harmed by the conspiracy between Masco and the five manufacturers.

Your verdict should not be influenced by the fact that this is a class action. You should not construe the physical absence of any class member in any way as lack of concern or interest on his or her part as to the outcome of the litigation.

824949.1

3

One purpose of the class action procedure to avoid having to bring each class member into court, and, therefore, the absence of class members from this trial should not be construed against the class in any way.

AUTHORITY:

Order and Opinion, February 9, 2009, at 14; Fed. R. Civ. P. 23 (adapted); *In re Universal Serv. Fund Tel. Billing Practices Litig.*, 219 F.R.D. 661 (D. Kan. 2004); *In re Vitamins Antitrust Litig.*, MDL Docket No. 1285, Misc. No. 99-197 (D.D.C.) (TFH), Instruction No. 2. (attached as Exhibit A); *see also Luna v. Del Monte Fresh Produce (Southeast), Inc.*, 2007 WL 1500269, at *6 (N.D. Ga. May 18, 2007) (Carnes, J.) (explaining that imposition of burdens like individualized discovery on absent or passive class members would defeat purpose of class action); Fed. R. Civ. 23(a)(1) (requiring that class is so numerous that joinder of all members is impracticable).

## PLAINTIFFS' PROPOSED INSTRUCTION NO. 2

### *Basic Instructions - Deposition Testimony*

During the trial of this case, certain testimony has been presented to you by way of deposition, consisting of sworn recorded answers to questions asked of the witness in advance of the trial by one or more of the attorneys for the parties to the case. The testimony of a witness who, for some reason, cannot be present in court to testify from the witness stand may be presented in writing or by videotape, under oath, in the form of a deposition. Such testimony is entitled to the same consideration, and is to be judged as to credibility, and weighed and otherwise considered by the jury, insofar as possible, in the same way as if the witness had been present and had testified from the witness stand.

AUTHORITY:

3A Kevin F. O'Malley et al., *Federal Jury Practice & Instructions*, § 150.01 (5th ed. 2001) (adapted).

824949.1

5

## PLAINTIFFS' PROPOSED INSTRUCTION NO. 3

### *Plaintiffs' Burden of Proof*

In this case it is the responsibility of the Plaintiffs to prove every essential part of their claim by a "preponderance of the evidence." This is sometimes called the "burden of proof" or the "burden of persuasion."

A "preponderance of the evidence" simply means an amount of evidence that is enough to persuade you that the plaintiff's claim is more likely true than not true.

In deciding whether any fact has been proved by a preponderance of the evidence you may consider the testimony of all of the witnesses, regardless of who may have called them, and all of the exhibits received in evidence, regardless of who may have produced them.

If the proof fails to establish any essential part of the Plaintiffs' claim by a preponderance of the evidence, you should find for Masco as to that claim.

AUTHORITY:

*Eleventh Circuit Pattern Jury Instructions Civil* (2005 ed.) at 22, Instruction No. 6.1.

824949.1

6

## PLAINTIFFS' PROPOSED INSTRUCTION NO. 4

### *Sherman Act - Section 1, Per Se Violation*
### *Conspiracy To Fix Prices*

In this case, the Plaintiffs claim that Masco violated Title 15, United States

Code, Section 1, commonly known as Section 1 of the Sherman Act, which is part

of the antitrust laws of the United States.

The purpose of the antitrust laws is to preserve our system of free and open

competition, the most important part of our private enterprise system.  The

Supreme Court has stated that the Sherman Act is as important to the preservation

of economic freedom and our free-enterprise system as the Bill of Rights is to the

protections of our fundamental personal freedoms.[1]  The law promotes the concept

that free competition results in the best allocation of economic resources; but, the

law does not guarantee success to those who enter into business because it also

recognizes that in the natural operation of our economic system, some competitors

are going to lose business, or even go out of business, while others gain and

prosper.

---

[1] As authority for this sentence, *see United States v. Topco Assocs., Inc.*, 405
U.S. 596, 610 (1972) ("Antitrust laws in general, and the Sherman Act in
particular, are the Magna Carta of free enterprise.  They are as important to the
preservation of economic freedom and our free-enterprise system as the Bill of
Rights is to the protection of our fundamental personal freedoms.").

Acts become unlawful, therefore, only when they constitute an unreasonable restraint on interstate commerce.

Plaintiffs claim that Masco violated Section 1 of the Sherman Act by conspiring with the country's five major fiberglass insulation manufacturers – CertainTeed, Guardian, Johns Mansville, Owens Corning and Knauf – to maintain and increase the "spread" between the prices that Masco paid for fiberglass insulation and the prices paid by Plaintiffs and the class members. Plaintiffs also claim that Masco agreed to support and coordinate price increases from the manufacturers in exchange for even larger price increases to members of the class.

There are four specific facts that the Plaintiffs must prove by a preponderance of the evidence in order to establish their antitrust claim:

| | |
|---|---|
| First: | That there was a combination or conspiracy between or among Masco and two or more of the insulation manufacturers to fix, raise or maintain the prices of fiberglass insulation; |
| Second: | That such combination or conspiracy constituted an "unreasonable" restraint on interstate commerce as hereafter defined; |
| Third: | That the business activities of Masco and its alleged co-conspirators had a substantial effect or the potential of causing a substantial effect on interstate commerce, and that their challenged activities involve a substantial amount of interstate commerce; and |

> Fourth:  That the Plaintiffs and the class members suffered injury in
> their business or property as a proximate result of the
> combination or conspiracy.

I will now give you further instructions on each of these four elements.

(1)    Existence of a Combination or Conspiracy.  The first thing that

Plaintiffs must prove is the existence of a "combination or conspiracy."

A combination or conspiracy is formed whenever two or more persons or

corporations knowingly join together to accomplish an unlawful purpose by

concerted action.  The essence of a combination or conspiracy is an agreement

between two or more persons or corporations to violate or disregard the law.

However, the evidence in the case need not show that the members of an alleged

conspiracy entered into any express or formal agreement.

What a preponderance of the evidence in the case must show is that Masco

and two or more of the manufacturers knowingly came to a common and mutual

understanding to accomplish, or to attempt to accomplish, an unlawful purpose.

To act "knowingly" means to act voluntarily and intentionally, and not

because of mistake or accident.

You will note that there must be at least two separate persons or corporations

who reach an agreement or understanding in order to find that a conspiracy was

formed.

You should also bear in mind that mere similarity of conduct among various persons, and the fact that they may have associated with each other, and may have met together and discussed common aims and interests, does not necessarily establish the existence of a conspiracy. Also, a mere similarity of business practices on the part of one party and others, or even the fact that they may have charged identical prices for the same goods and services, does not necessarily establish a conspiracy, because those things may be the natural result of ordinary competitive behavior in a free and open market. In order to be evidence of a combination or a conspiracy, such a similar business practice must have been contrary to the alleged conspirators' individual economic self-interest such that they would not have engaged in the practice if they were not conspiring to fix prices or otherwise restrain trade.

In your consideration of the evidence you should first decide whether the alleged conspiracy existed. If you conclude that the conspiracy did exist, you should next decide whether Masco was a knowing member of that conspiracy.

If you decide that the alleged conspiracy was knowingly formed, and that Masco knowingly became a member of the conspiracy, either at the beginning or later on, then the ultimate success or failure of the conspiracy to

accomplish its purpose does not matter, so long as the Plaintiffs and the class members sustained some damage as a result of the conspiracy.

(2)   "Unreasonable" Restraint on Interstate Commerce.  The second fact the Plaintiffs must prove is that the alleged conspiracy resulted in an "unreasonable" restraint on interstate commerce.

You are instructed that a conspiracy to fix prices of the type alleged by Plaintiffs is treated by the law as a "per se" violation and is, in and of itself, an "unreasonable" restraint of trade.  Whether the prices agreed to be fixed were reasonable or unreasonable does not matter.  So, a common plan or understanding knowingly made, or arranged, or entered into, between two or more competitors engaged in interstate trade or commerce, to adopt or follow any pricing formula that will result in raising, or lowering, or maintaining prices charged for goods or services sold in interstate trade or commerce would automatically constitute a price fixing conspiracy and an "unreasonable" restraint on interstate commerce in violation of the federal antitrust laws.

(3)   Substantial Effect Upon a Substantial Amount of Interstate Commerce.  The third fact the Plaintiffs must prove is that the business activities of Masco and its alleged co-conspirators substantially affected or had substantial potential effects on interstate commerce and that the alleged combination or

824949.1

11

conspiracy involved a substantial amount of interstate commerce. The term "interstate commerce" refers to business transacted across state lines or between persons or corporations having their residences or businesses in different states. It differs from intrastate commerce, which is business done within a single state. There can be no violation of the Sherman Act unless you decide that the activities of Masco and its alleged co-conspirators have actually occurred in interstate commerce or, if done within one state, that these local activities adversely affected or had potential adverse effects on interstate commerce and involved a substantial amount of such commerce. In other words, it is not necessary that the disputed transactions be shown to be interstate transactions so long as Masco and its alleged co-conspirators' local activities within one state are shown to have affected interstate commerce in a substantial way and involve a substantial amount of such commerce.

(4) Plaintiff's Injury was Proximately Caused by the Combination or Conspiracy. The fourth fact the Plaintiffs must prove is that the Plaintiffs and the class members suffered injury in their business or property as a "proximate result" of the alleged combination or conspiracy.[2]

---

[2] Sentences that appear at this point in the pattern charge applicable to claims for business failures or lost profits have been deleted.

An injury to a business is the "proximate result" of an antitrust violation only when the violation directly and in natural and continuous sequence produces, or contributes substantially to producing, such injury. In other words, the alleged violation must be a direct, substantial, and identifiable cause of the injury that the Plaintiff claims, so that, "but for" the antitrust violation, the injury would not have occurred.

(5)    Damages. If you should find that the Plaintiffs established each of the four elements described above, the law provides that the Plaintiffs and the class members should be fairly compensated for all damage, if any, to their businesses and property that was proximately caused by the Masco's violation of the antitrust laws.[3]

AUTHORITY:

*Eleventh Circuit Pattern Jury Instructions Civil* (2005 ed.), at 226-33, Instruction No. 3.1 (2005) (adapted); 15 U.S.C. §§1 & 7.

---

[3] Sentences that appear at this point in the pattern charge applicable to claims for business failures or lost profits have been deleted.

## PLAINTIFFS' PROPOSED INSTRUCTION NO. 5

### *Sherman Act – Contract, Combination or Conspiracy*

To establish the existence of a conspiracy, the evidence need not show that its members entered into any formal or written agreement; that they met together; or that they directly stated what their object or purpose was, or the details of it, or the means by which they would accomplish their purpose. The agreement itself may have been entirely unspoken. What the evidence must show to prove that a conspiracy existed is that the alleged members of the conspiracy in some way came to an agreement to accomplish a common purpose. It is the agreement to act together that constitutes the conspiracy.[4]

---

[4] *United States v. General Motors Corp.*, 384 U.S. 127, 142-43 (1966) (no express agreement required to form conspiracy under Sherman Act Section 1); *In re Plywood Antitrust Litig.*, 655 F.2d 627, 634 (5th Cir. Sep. 8, 1981) ("It is 'enough that, knowing that concerted action was contemplated and invited, the (defendants) gave their adherence to the scheme and participated in it.'") (quoting *Gainesville Utilities Dep't v. Florida Power & Light Co.*, 573 F.2d 292, 300 (5th Cir. 1978); *Williamson Oil Co. v. Philip Morris USA*, 346 F.3d 1287, 1299 n.10 (11th Cir. 2003) ("meeting of the minds need not be formal"); VI Phillip E. Areeda, *Antitrust Law* ¶ 1404, at 23 (3d ed. 2010) ("It is equally clear that there will be an agreement for antitrust purposes even though the challenged arrangement falls far short of forming a contract because … the understanding is too vague to allow a court to enforce it (even if it were not illegal).") (discussing the "informal 'gentlemen's agreement'" held illegal *per se* in *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 179 (1940)).

A conspiracy may be formed without all parties coming to an agreement at the same time, such as where competitors, without previous agreement, separately accept invitations to participate in a plan to restrain trade.[5]  The agreement may be shown if the proof establishes that the parties knowingly worked together to accomplish a common purpose.  It is not essential that all persons acted exactly alike, nor is it necessary that they all possessed the same motive for entering the agreement.[6]

Direct proof of an agreement may not be available.  A conspiracy may be disclosed by the circumstances or by the acts of the members.  Therefore, you may infer the existence of an agreement from what you find the alleged members

---

[5] *Interstate Circuit, Inc. v. United States*, 306 U.S. 208, 220-21 (1939) (conspiracy formed by distributors' acceptances of separate invitations by a powerful seller); *Toys "R" Us, Inc. v. FTC*, 221 F.3d 928, 934-35 (7th Cir. 2000) (conspiracy formed by sellers' acceptances of separate invitations by a powerful distributor); *United States v. Masonite Corp.*, 316 U.S. 265, 274-75 (1942) (conspiracy formed by participants' acceptances of invitation by central figure over time).

[6] *Spectators' Commun. Network, Inc. v. Colonial Country Club*, 253 F.3d 215, 220 (5th Cir. 2001) ("Antitrust law has never required identical motives among conspirators, and even reluctant participants have been held liable for conspiracy."); *Albrecht v. Herald Co.*, 390 U.S. 145, 149-50 (1968) (same principle of law), *overruled on other grounds*, *State Oil Co. v. Khan*, 522 U.S. 3 (1997); *see also* 1 ABA Section of Antitrust Law, Antitrust Law Developments at 4 (4th ed. 1997) (collecting cases for this proposition).

actually did, as well as from the words they used.[7]  Mere similarity of conduct

among various persons, however, or the fact that they may have associated with

one another and may have met or assembled together and discussed common aims

and interests, does not establish the existence of a conspiracy unless the evidence

tends to exclude the possibility that the persons were acting independently.  If they

acted similarly but independently of one another, without any agreement among

them, then there would not be a conspiracy.[8]

It is not necessary that the evidence show that all of the means or methods

claimed by the plaintiffs were agreed upon to carry out the alleged conspiracy; nor

that all of the means or methods that were agreed upon were actually used or put

into operation; nor that all the persons alleged to be members of the conspiracy

actually were members.  What the evidence must show is that the alleged

---

[7] *DeLong Equip. Co. v. Washington Mills Abrasive Co.*, 887 F.2d 1499, 1515 (11th Cir. 1989) ("Conspiracies are rarely evidenced by explicit agreements, and must almost always be proven by inferences that may fairly be drawn from the behavior of the alleged conspirators."); 1 ABA Section of Antitrust Law, Antitrust Law Developments at 5 (4th ed. 1997) ("Circumstantial evidence as to this element of the offense [conspiracy] is, therefore, admissible and often dispositive.")

[8] *Monsanto Co. v. Spray-Rite Serv. Co.*, 465 U.S. 752, 768 (1984) ("[T]here must be evidence that tends to exclude the possibility of independent action by the [parties].  That is, there must be direct or circumstantial evidence that reasonably tends to prove that [the parties] had a conscious commitment to a common scheme designed to achieve an unlawful objective.").

conspiracy existed, that one or more of the means or methods alleged was used to carry out its purpose, and that Masco knowingly became a member of the conspiracy.

In determining whether an agreement has been proved, you must view the evidence as a whole and not piecemeal.[9] In considering the evidence, you first should determine whether or not the alleged conspiracy existed. If you conclude that the conspiracy did exist, you should next determine whether Masco knowingly became a member of that conspiracy with the intent to further its purposes.

AUTHORITY:

ABA Section of Antitrust Law, Model Jury Instructions in Civil Antitrust Cases (2005 ed.) at B-2 through B-4 (adapted).

---

[9] *See Williamson Oil Co. v. Philip Morris USA*, 346 F.3d 1287, 1301 (11th Cir. 2003) & *In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651, 655-56 (7th Cir. 2002), both holding that evidence of conspiracy must be considered as a whole, and not in isolation.

## PLAINTIFFS' PROPOSED INSTRUCTION NO. 6

### *Sherman Act - Corporation Can Act Only Through Agents*

As a general rule, whatever any person is legally capable of doing himself or herself can be done through another as agent. If the acts of an employee or other agent are voluntarily and intentionally ordered or directed, or authorized or consented to by a person, then the law holds that person responsible for such acts, the same as if the acts had in fact been done by that person.

A corporation, such as Masco or the insulation manufacturers, is in law a person, but, of course, it cannot act other than through its directors, or officers, or employees, or other agents. The law therefore holds a corporation responsible for all unlawful acts of its directors, or officers, or employees, or other agents, provided such unlawful acts are done within the scope of their authority, as would usually be the case if done in the ordinary course of their employment, or in the ordinary course of the corporation's business.

Authority to act for a corporation in a particular matter, or in a particular way or manner, may be inferred from the surrounding facts and circumstances shown by the evidence in the case. That is to say, authority to act for a corporation, like any other fact in issue in a civil case, need not be established by direct evidence, but may be established by indirect or circumstantial evidence.

824949.1

18

Every act of any director, or officer, or employee, or other agent, on behalf of, or in the name of a corporation, if done within the scope of the person's authority, is by law the act of the corporation itself.

AUTHORITY:

3A Kevin O'Malley et al., Federal Jury Practice and Instructions, §150.02 (5th ed. 2001) (adapted).

## PLAINTIFFS' PROPOSED INSTRUCTION NO. 7

### *Sherman Act - Co-Conspirators Not Named as Defendants*

It is not necessary for Plaintiffs to join as defendants in this case all persons

or corporations who may have participated with Masco in the alleged conspiracy.

A party injured by an unlawful conspiracy may recover all of its damages against

one or all of those participating in the conspiracy.[10] The injured party may enforce

its right of recovery against one, or some, or all at that party's election.  It is

immaterial, as a matter of law, that any other members of the conspiracy may have

not been joined in this suit by Plaintiffs.  You should not speculate on the reason

why other persons who may have participated in the conspiracy are not present at

trial as defendants.

AUTHORITY:

3A Kevin O'Malley et al., Federal Jury Practice and Instructions, §150.42 (5th ed.
2001 & 2010 Supp.) (adapted); *American Motor Inns, Inc. v. Holiday Inns, Inc.*,
521 F.2d 1230, 1244 (3d Cir. 1975); *Professional Beauty Supply, Inc. v. National
Beauty Supply, Inc.*, 594 F.2d 1179, 1183 (8th Cir.), *abrogated on other grounds*,

---

[10] *Lowell v. American Cyanamid Co.*, 177 F.3d 1228, 1230 (11th Cir. 1999)
("Plaintiffs may sue American Cyanamid alone for the full cost of the conspiracy
with the dealers . . . ."); *Wilson P. Abraham Constr. Corp. v. Texas Indus.,
Inc.*, 604 F.2d 897, 904 (5th Cir. 1979), ("Antitrust coconspirators are jointly and
severally liable for all damages caused by the conspiracy to which they were a
party. A private plaintiff need not sue all coconspirators but may choose to proceed
against any one or more of them.") (citations omitted), *aff'd*, 451 U.S. 630 (1981).

*Texas Industries, Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630 (1981); *Walker Distrib. Co. v. Lucky Lager Brewing Co.*, 323 F.2d 1, 8 (9th Cir. 1963). *Cf. United States v. General Motors*, 384 U.S. 127, 129 n.2 (1966) (certain officers and directors were named as co-conspirators but not as defendants).

## PLAINTIFFS' PROPOSED INSTRUCTION NO. 8

### *Conspiracy - Acts and Declarations of Co-Conspirators*

Whenever it appears from a preponderance of the evidence in the case that a conspiracy existed, and that a defendant was one of the members, then the statements made and the acts by any person likewise found to be a member may be considered by you as evidence in the case as to the defendant found to have been a member. This is so even though the statements and acts may have occurred in the absence and without the knowledge of the defendant, provided such statements and acts were knowingly made and done during the continuance of the conspiracy, and in furtherance of some object or purpose of the conspiracy.

Otherwise, any admission or statement made, or act done outside of court, by one person, may not be considered as evidence in the case against any person who was not present and heard the statement made, or saw the act done.

AUTHORITY:

3A Kevin O'Malley et al., *Federal Jury Practice and Instructions* (5th ed. 2001) at p. 80, § 150.45.

824949.1

## PLAINTIFFS' PROPOSED INSTRUCTION NO. 9

### *Sherman Act - Ignorance of Antitrust Laws No Defense*

The proof need not show Masco's knowledge that a particular act or failure to act was a violation of the federal antitrust laws. Every person is charged with knowing what the law forbids, and what the law requires to be done.

If you should find from a preponderance of the evidence in the case that the conspiracy alleged by Plaintiffs was knowingly formed, and that Masco knowingly became a member of the conspiracy, then the fact that Masco or its alleged co-conspirators may have believed, in good faith, that what was being done was not unlawful would not be a defense in this case.

AUTHORITY:

3A Kevin O'Malley et al., Federal Jury Practice and Instructions, §150.03 (5th ed. 2001) (adapted).

*Law v. NCAA*, 185 F.R.D. 324, 337 (D. Kan.1999) (instruction in antitrust case provided a "claim of good motives, like a claim of ignorance of the law, cannot justify or excuse a violation of the federal antitrust laws, and so would be no defense in this case"); *United States v. Pook*, 1988 WL 36379, at *4 (Apr. 18, 1988) (approving use of earlier version of this instruction in criminal antitrust case), citing *United States v. Fischbach & Moore, Inc.*, 750 F.2d 1183, 1196 (3d Cir. 1984), *cert. denied*, 470 U.S. 1029 (1985); ABA Section of Antitrust Law, Model Jury Instructions in Civil Antitrust Cases (2005 ed.) at B-26.

## PLAINTIFFS' PROPOSED INSTRUCTION NO. 10

### *Horizontal Price Fixing*

Under the Sherman Act it is illegal for competitors, regardless of their size

or amount of sales, to agree on the prices to be charged for their competing

products.  An agreement between competing firms can violate this rule even if

there is not an agreement on the exact price to be charged.  For example, it is

illegal for competing companies to agree on maximum or minimum prices, a range

within which prices will fall, a formula to set prices, or a component of prices,

such as a shipping charge or an interest rate.[11]

It is also illegal for competitors to agree on a plan or scheme that will tend to

stabilize prices.  A conspiracy to prevent the decrease of prices or to slow the

decrease of prices is as illegal as a conspiracy to raise prices.[12]

---

[11] *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 222 (1940) ("Nor is it important that the prices paid by the combination were not fixed in the sense that they were uniform and inflexible. . . . An agreement to pay or charge rigid, uniform prices would be an illegal agreement under the Sherman Act.  But so would agreements to raise or lower prices whatever machinery for price-fixing was used."). "[P]rices are fixed . . . if the range within which purchases or sales will be made is agreed upon, if the prices paid or charged are to be at a certain level or on ascending or descending scales, if they are to be uniform, or if by various formulae they are related to the market prices." *Id.*

[12] *United States v. Container Corp. of Am.*, 393 U.S. 333, 336 (1969) (unlawful to conspire to "stabilize prices though at a downward level"); *see, e.g.,*

AUTHORITY:

ABA Section of Antitrust Law, Model Jury Instructions in Civil Antitrust Cases
(2005 ed.) at B-19 through B-20.

---

*United States v. SKW Metals & Alloys, Inc.*, 195 F.3d 83, 91 n.6 (2d Cir. 1999)
(affirming conviction for conspiracy to limit the decline of falling prices).

## PLAINTIFFS' PROPOSED INSTRUCTION NO. 11

### *Horizontal Price Fixing - Reasonableness of Prices No Excuse*

The Sherman Act makes agreements among competitors to fix prices unlawful, regardless of whether the prices that are fixed are reasonable. Therefore, if you find that a price-fixing conspiracy existed, it does not matter whether the prices agreed upon were high or low or reasonable or unreasonable.

AUTHORITY:

ABA Section of Antitrust Law, Model Jury Instructions in Civil Antitrust Cases (2005 ed.) at B-27.

*United States v. Trenton Potteries Co.*, 273 U.S. 392, 396-97 (1927).

824949.1

## PLAINTIFFS' PROPOSED INSTRUCTION NO. 12

### *Horizontal Price Fixing - Evidence of Competition*

Evidence that the insulation manufacturers actually engaged in price competition with each other in some manner has been admitted to assist you in deciding whether they entered into an agreement to fix prices. If you find that Masco and the insulation manufacturers agreed to maintain or increase a spread between the prices paid by Masco and the class members for fiberglass insulation products, however, it is no defense that the insulation manufacturers actually competed in some respects with each other, or that they did not eliminate all competition between them, or that prices for fiberglass insulation were lower than they had been prior to that agreement.[13] Similarly, a price-fixing agreement is

---

[13] *United States v. Container Corp. of Am.*, 393 U.S. 333, 337 (1969) (conspiracy unlawful even though it merely stabilized prices "at a downward level" and some competition continued); *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 220 (1940) (fact that some price competition among the conspirators continues or is even allowed by the agreement "is of no consequence"); *In re Yarn Processing Patent Validity Litig.*, 541 F.2d 1127, 1136-37 (5th Cir. 1976) (conspiracy to limit price competition is unlawful per se even if agreement allows some competition to continue).

unlawful even if it did not extend to all products sold by the manufacturers or did not affect all of their customers.[14]

AUTHORITY:

ABA Section of Antitrust Law, Model Jury Instructions in Civil Antitrust Cases (2005 ed.) at B-28.

---

[14] *United States v. Container Corp. of Am.*, 393 U.S. 333, 337 (1969) (any "limitation or reduction of price competition brings the case within the [*per se*] ban" on price fixing).

824949.1

## PLAINTIFFS' PROPOSED INSTRUCTION NO. 13

### *Horizontal Price Fixing - Evidence of Price Charged*

Evidence of the prices actually charged by insulation manufacturers for fiberglass insulation products has been admitted to assist you in deciding whether they agreed to fix prices as claimed by plaintiffs. Such evidence may lead you to conclude that Masco and the insulation manufacturers never entered into the alleged price-fixing conspiracy. Or it may lead you to conclude that they made an agreement but failed always to live up to it, or undercut one another, or offered prices different from those agreed upon to certain customers. If you find that Masco and the insulation manufacturers agreed to fix prices, the fact that they did not observe it on every occasion or for every customer is not a defense.

AUTHORITY:

ABA Section of Antitrust Law, Model Jury Instructions in Civil Antitrust Cases (2005 ed.) at B-29.

*In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651, 656 (7th Cir. 2002) (a price-fixing agreement is "a per se violation of the Sherman Act even if most or for that matter all transactions occur at lower prices"); *N. Jackson Pharm., Inc. v. Express Scripts, Inc.*, 345 F. Supp. 2d 1279, 1295-96 (N.D. Ala. 2004) (unlawful conspiracy may exist even where prices paid by the victims were "widely divergent").

824949.1

29

## PLAINTIFFS' PROPOSED INSTRUCTION NO. 14

### *Success of Conspiracy*

If it appears from a preponderance of the evidence in the case that the conspiracy alleged by Plaintiffs was knowingly formed and that Masco and at least two of the manufacturers, knowingly became members of the conspiracy, either at the inception or beginning of the plan or scheme, or afterwards, then the success or failure of the conspiracy to accomplish the common object or purpose is immaterial, so long as Plaintiffs and the class members sustained some damage as a result of the conspiracy.

AUTHORITY:

3A Kevin O'Malley et al., *Federal Jury Practice and Instructions* (5th ed. 2001) at pp. 81-82, § 150.46 (adapted).

824949.1

## PLAINTIFFS' PROPOSED INSTRUCTION NO. 15

### *Definition of "Person"*

When I use the term "person" in these instructions, that includes not only

individuals, but also corporations, partnerships and other organizations of any kind.

AUTHORITY:

3A Kevin O'Malley et al., *Federal Jury Practice and Instructions* (5th ed. 2001) at
pp. 84, § 150.60 (adapted).

824949.1

## PLAINTIFFS' PROPOSED CHARGE NO. 16

### *Proximate Cause/Multiple Causes*

An injury or damage is proximately caused by an act, or a failure to act, whenever it appears from the evidence in the case that the act or omission played a substantial part in bringing about or actually causing the injury or damage, and that the injury or damage was either a direct result or a reasonably probable consequence of the act or omission.

This does not mean that the law recognizes only one proximate cause of an injury or damage, consisting of only one factor or thing, or the conduct of only one person. On the contrary, many factors or things, or the conduct of two or more persons, may operate at the same time, either independently or together, to cause injury or damage; and in such a case, each may be a proximate cause.

AUTHORITY:

3A Kevin O'Malley et al., *Federal Jury Practice and Instructions* (5th ed. 2001) at p. 92, § 150.70 & at p. 95, § 150.71; *see also Gulf States Reorg. Group, Inc. v. Nucor Corp.*, 466 F.3d 961, 965 (11th Cir. 2006) (plaintiff need not show that the conspiracy was the "exclusive cause" of its injury).

824949.1

## PLAINTIFFS' PROPOSED INSTRUCTION NO. 17

### *Injury to Business or Property*

Plaintiffs must establish that they and the class members have suffered an injury to their "business or property."  The term "business" includes any commercial interest or venture, and you are instructed that plaintiffs and the class have been injured in their "business" if you find that they have suffered injury to any of their commercial interests or enterprises as a result of defendants' alleged antitrust violation.  You are further instructed that Plaintiffs and the class members have been injured in their "property" if you find that they have paid an inflated price for goods, services, or any legal interest of value, or have lost money as a result of defendants' alleged antitrust violation.

AUTHORITY:

ABA Section of Antitrust Law, Model Jury Instructions in Civil Antitrust Cases (2005 ed.) at F-7.

*See also* authorities cited in support of Plaintiffs' Proposed Charge No. 18, *infra*.

824949.1

33

## PLAINTIFFS' PROPOSED INSTRUCTION NO. 18

### *Damages – Overcharge Measure*

In this case, Plaintiffs seek to recover the difference between the prices that

they paid for fiberglass insulation and the prices that that would have paid absent

Masco's alleged antitrust violation.  This difference is sometimes called an

"overcharge," and it is a proper measure of damages in an antitrust case like this

one.[15]

If you find that Plaintiffs and the class members have paid higher prices for

fiberglass insulation than they would otherwise have paid as a result of Masco's

---

[15] 3A Kevin O'Malley et al., *Federal Jury Practice and Instructions* (5th Ed. 2001) at 8 ("In cases where the defendant charged the plaintiff too much for a product or service, the plaintiff's actual damages are the difference between the price that would have been charged in a competitive market and the price the plaintiff paid as a result of the defendant's antitrust violation."); *Kansas v. UtiliCorp United, Inc.*, 497 U.S. 199, 203-19 (1990) (purchaser is entitled to recover the overcharge caused by the antitrust violation); *Hawaii v. Standard Oil Co.*, 405 U.S. 251, 264 n.14 (1972) ("[D]amages are established by the amount of the overcharge."); *Howard Hess Dental Labs. Inc. v. Dentsply Intern., Inc.*, 424 F.3d 363, 374 (3d Cir. 2005) ("'overcharge [is] the difference between the price paid for goods actually purchased and the price that would have been paid absent the illegal conduct' ... [Th]e standard method of measuring damages in price enhancement cases is overcharge, not lost profits."); ABA Section of Antitrust Law, *Proving Antitrust Damages: Legal and Economic Issues* at 172 (1996) ("The typical measure of damages is the difference between the actual price and the presumed competitive price multiplied by the quantity purchased. This was the calculation that the Supreme Court approved in *Chattanooga Foundry* [*& Pipe Works v. Atlanta*, 203 U.S. 390, 396 (1906)]."); *In re Potash Antitrust Litig.*, 159 F.R.D. 682, 697-98 (D. Minn. 1995).

824949.1

alleged antitrust violation, then they are entitled to recover the difference between the prices that they paid and the prices that that would have paid in the absence of that alleged antitrust violation.[16] It is irrelevant whether Plaintiffs and the class members also lost business or profits as a result of Masco's alleged antitrust violation or were able to recover that inflated price in their sales to another purchaser.[17]

---

[16] *Id.*

[17] *See, e.g., Kansas,* 497 U.S. at 203-04 & 206-07 (discussing *Hanover Shoe, Inc. v. United Shoe Machinery Corp.*, 392 U.S. 481 (1968) and *Illinois Brick Co. v. Illinois,* 431 U.S. 720 (1977) and confirming that a direct purchaser is entitled to recover the overcharge without regard to whether it was "passed on" to other purchasers); *Associated General Contractors, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 543-44 (1983) (confirming that violator may not defend against civil liability on basis that direct purchaser "passed on" the overcharge); *Hawaii,* 405 U.S. at 264 n.14 ("[D]amages are established by the amount of the overcharge. Under § 4 [of the Clayton Act], courts will not go beyond the fact of this injury to determine whether the victim of the overcharge has partially recouped its loss in some other way, even though a State, for example, may ultimately recoup some part of the overcharge through increased taxes paid by the seller.").

## PLAINTIFFS' PROPOSED INSTRUCTION NO. 19

### *Damages - Speculation Not Permitted*

Damages may not be based on guesswork or speculation.  If you find that a damages calculation cannot be based on evidence and reasonable inferences, and instead can only be reached through guesswork or speculation, then you may not award damages.  If the amount of damages attributable to an antitrust violation cannot be separated from the amount of harm caused by factors other than the antitrust violation except through guesswork or speculation, then you may not award damages.

You are permitted to make reasonable estimates in calculating damages.  It may be difficult for you to determine the precise amount of damage suffered by the Plaintiffs and the class.  If Plaintiffs and the class establish with reasonable probability the existence of an injury proximately caused by the defendants' antitrust violation, you are permitted to make a just and reasonable estimate of the damages.  So long as there is a reasonable basis in the evidence for a damages award, Plaintiffs and the class should not be denied a right to be fairly compensated just because damages cannot be determined with absolute mathematical certainty.  The amount of damages must, however, be based on reasonable, non-speculative assumptions and estimates.  Plaintiffs and the class

824949.1

must prove the reasonableness of each of the assumptions upon which the damages

calculation is based. If you find that plaintiffs and the class have failed to carry

their burden of providing a reasonable basis for determining damages, then your

verdict must be for defendants. If you find that Plaintiffs and the class have

provided a reasonable basis for determining damages, then you may award

damages based on a just and reasonable estimate supported by the evidence.

AUTHORITY:

ABA Section of Antitrust Law, Model Jury Instructions in Civil Antitrust Cases
(2005 ed.) at F-15 through F-16 (2005).

*Graphic Prods. Distribs., Inc. v. ITEK Corp.*, 717 F.2d 1560, 1579 (11th Cir. 1983)
("Once an antitrust violation and its causal relation to plaintiff's injury have been
established, the burden of proving the amount of damages is much less severe. ...
While a jury may not base its judgment on speculation or guess-work, all that can
be required is a just and reasonable-albeit necessarily imprecise-estimate based
upon relevant data.") (citing *Bigelow v. RKO Radio Pictures*, 327 U.S. 251, 264-66
(1946); *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 395 U.S. 100, 124 (1969)
and *Story Parchment Co. v. Paterson Parchment Paper Co.,* 282 U.S. 555, 563
(1931)); *Malcolm v. Marathon Oil Co.,* 642 F.2d 845, 858 (5th Cir. 1981) ("'[I]t
will be enough if the evidence show[s] the extent of the damages as a matter of just
and reasonable inference, although the result be only approximate.'") (quoting
*Story Parchment*, 282 U.S. at 563); *Greene v. General Foods Corp.*, 517 F.2d 635,
662-63 (5th Cir. 1975).

## PLAINTIFFS' PROPOSED INSTRUCTION NO. 20

### *Statute of Limitations – Fraudulent Concealment*

The antitrust laws require persons who believes themselves to have been injured by an antitrust violation bring suit within four years after that injury occurred.  An exception to this limitation of time in which to sue is where the defendant has actively concealed its wrongful act; this is called fraudulent concealment.

In this case, Plaintiffs filed their complaint on October 19, 2004.  Under the four-year statute of limitations, they may recover any damages suffered as a result of the alleged conspiracy after October 19, 2000.  Plaintiffs may recover damages suffered before October 19, 2000 if they show the following by a preponderance of the evidence:

First, that a conspiracy existed from which Plaintiffs and the class members sustained damage prior to October 19, 2000;

Second, that Masco or its alleged co-conspirators took affirmative steps to conceal the existence of the conspiracy, and,

Third, that Plaintiffs and the class members did not know of the existence of the conspiracy and could not have discovered it by the exercise of due diligence.

824949.1

With regard to the third element, the due diligence requirement, Plaintiffs need not show the actual exercise of diligence.  It is enough for Plaintiffs to show that reasonable further investigation by a reasonably diligent plaintiff would not have revealed the conspiracy.[18]

If Plaintiffs are able to establish the existence of these three elements as well as the other elements of the claim as defined in these instructions, all by preponderance of the evidence, then the statute of limitations is not a bar to recovery for sales that occurred prior to October 19, 2000.

If, however, Plaintiffs and the class members knew of the existence of a conspiracy or could have discovered the conspiracy by the exercise of due diligence, prior to the time Plaintiffs filed this lawsuit, then they are not entitled to recover damages for sales that occurred more than four years prior to the time such discovery was made or should have been made.

---

[18] As authority for this sentence, *see Morton's Mkt., Inc. v. Gustafson's Dairy*, 198 F.3d 823, 835 (11th Cir. 1999) (rejecting argument that plaintiff must have conducted some investigation to argue fraudulent concealment in favor of objective standard that "the plaintiff is not charged with knowledge of his claim until he *should have* discovered the basis for his claims") (emphasis in original); *Supermarket of Marlinton, Inc. v. Meadow Gold Dairies, Inc.*, 71 F.3d 119, 128 (4th Cir. 1995) ("with regard to the third element of that test, the due diligence requirement, it is possible for a plaintiff to satisfy that element without demonstrating that it engaged in any specific inquiry. If the plaintiff establishes that it was not (and should not have been) aware of facts that should have excited further inquiry on its part, then there is nothing to provoke inquiry.").

If you find a conspiracy in accordance with this charge and if you also find

from a preponderance of evidence that the conspirators agreed to conceal the

conspiracy and to take affirmative steps to ensure the concealment, then the acts of

concealment on the part of any one conspirator may be considered against all of

the conspirators.

AUTHORITY:

3A Kevin O'Malley et al., *Federal Jury Practice and Instructions*, § 150.82 (5th
ed. 2001) at pp. 99-100.

*Morton's Market, Inc. v. Gustafson's Dairy*, 198 F.3d 823, 832-35 (11th Cir. 1999);
*see also In re Beef Industry Antitrust Litig.*, 600 F.2d 1148, 1171 (5th Cir. 1979);
*Supermarket of Marlinton, Inc. v. Meadow Gold Dairies, Inc.,* 71 F.3d 119, 128
(4th Cir. 1995); *In re Carbon Dioxide Antitrust Litig.,* 1993 WL 559779, 1993-2
CCH Trade Cases ¶ 70,436, at *5 (M.D. Fla. Nov. 17, 1993).

## PLAINTIFFS' PROPOSED INSTRUCTION NO. 21

### *Damages – Absence of the Manufacturers at Trial*

In addition to Masco, plaintiffs originally sued the manufacturers

CertainTeed, Guardian, Johns Manville, and Knauf. These manufacturers resolved

their cases with Plaintiffs and the class members before trial. Plaintiffs did not sue

Owens Corning, which was in bankruptcy at the time this case was filed.

You are not to speculate about the basis or terms on which the manufacturers

resolved their claims with Plaintiffs and the class members. You also may not

factor into your damage calculation, if you decide to award damages, any

consideration of possible payments by any other party. The presence or absence of

the manufacturers as parties to this trial should not affect your verdict in any way.

AUTHORITY:

*See* authorities cited in support of Plaintiffs' Proposed Charge No. 7; *see also Lowell v. American Cyanamid Co.*, 177 F.3d 1228, 1230 (11th Cir. 1999) ("Plaintiffs may sue American Cyanamid alone for the full cost of the conspiracy with the dealers . . . . "); *Wilson P. Abraham Constr. Corp. v. Texas Industries, Inc.*, 604 F.2d 897, 904 (5th Cir. 1979) "Antitrust coconspirators are jointly and severally liable for all damages caused by the conspiracy to which they were a party. A private plaintiff need not sue all coconspirators but may choose to proceed against any one or more of them.") (citations omitted).

## PLAINTIFFS' PROPOSED INSTRUCTION NO. 22

### *Jury Not Concerned with Treble Damages, Costs or Attorney Fees*

If you find for Plaintiffs and the class members in accordance with these instructions it then becomes your responsibility to determine the actual damages that Plaintiffs and the class members have suffered by reason of the violations of the antitrust laws.  Your concern is only with determining the actual damages. You are not to concern yourself with the judgment to be entered by the court in the case.

AUTHORITY:

3A Kevin O'Malley et al., Federal Jury Practice and Instructions § 150.93 (5th ed. 2001) at p. 109.

Respectfully submitted, this 8th day of December, 2010.


/s/ Frank M. Lowrey IV
Michael B. Terry
Georgia Bar No. 702582
Email: *terry@bmelaw.com*
Frank M. Lowrey IV
Georgia Bar No. 410310
Email: *lowrey@bmelaw.com*
Steven J. Rosenwasser
Georgia Bar No. 614908
Email: *rosenwasser@bmelaw.com*
Michael A. Caplan
Georgia Bar No. 601039
Email: *caplan@bmelaw.com*
BONDURANT, MIXSON &
   ELMORE, LLP
3900 One Atlantic Center
1201 West Peachtree Street, N.W.
Atlanta, Georgia 30309-3417
(404) 881-4100


/s/ Jeffrey L. Berhold
Jeffrey L. Berhold
Georgia Bar No. 054682
Email: *jeff@berhold.com*
JEFFREY L. BERHOLD, P.C.
Promenade II, Suite 1050
1230 Peachtree Street, N.E.
Atlanta, Georgia 30309
(404) 872-3800

/s/ Craig G. Harley
Craig G. Harley
Georgia Bar No. 326813
Email: *charley@chitwoodlaw.com*
James M. Wilson, Jr.
Georgia Bar No. 768445
Email: *jmw@chitwoodlaw.com*
CHITWOOD HARLEY HARNES, LLP
2300 Promenade II
1230 Peachtree Street, N.E.
Atlanta, Georgia 30309
(404) 873-3900


**COUNSEL FOR PLAINTIFFS**

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that this document was prepared in Times New Roman 14 point.

/s/ Frank M. Lowrey IV
Frank M. Lowrey IV

## CERTIFICATE OF SERVICE

I hereby certify that I have electronically filed the foregoing **PLAINTIFFS'**

**PROPOSED JURY INSTRUCTIONS** with the Clerk of Court using the

CM/ECF system, which will automatically send email notification of such filing to

the following attorneys of record:

Kenneth G. Cole
ken_cole@mascohq.com

David A. Ettinger
dettinger@honigman.com

Maria A. Fehretdinov
maria.fehretdinov@lw.com

Gabrielle Z. A. Kohlmeier
gabrielle.kohlmeier@lw.com

Samuel W. Malone
wade.malone@nelsonmullins.com

Allyson M. Maltas
allyson.maltas@lw.com

William R. Sherman
william.sherman@lw.com

Gregory D. Wittrock
greg_wittrock@mascohq.com

Margaret M. Zwisler
margaret.zwisler@lw.com

I hereby certify that I have on this day mailed by United States Postal

Service, first-class postage prepaid, the document and Notice of Electronic Filing

to the following non-CM/ECF participants:

Laurence P. Czajkowski
Superior Roofing and Siding of Trumbull, Ct LLC
106 Water Street
New Haven, CT 06516

824949.1

This 8th day of December, 2010.

/s/ Frank M. Lowrey IV
Frank M. Lowrey IV

824949.1